UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CURARE LABORATORY LLC | ) | Chapter 11 |
| | ) | |
| Debtor | ) | Case No. 21-31588-crm |
| | ) | |

### CURARE LABORATORY LLC'S PLAN OF REORGANIZATION
* * *   * * *   * * *

Dated: June 1, 2022

Respectfully submitted,

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Counsel for Debtor*

**Article I.       Introduction**

Section 1.01   Summary

This Small Business Plan (the "Plan") under subchapter V of chapter 11 of the Bankruptcy Code proposes to pay creditors and equity interest holders of Curare Laboratory LLC (the "Debtor") from the future income and cash flow generated by distributions to be recaptured and/or received from the continued business operations of Bluewater Toxicology, LLC ("Bluewater").

This Plan provides for one (1) class of Priority Claims, one (1) class of Secured Claims, one (1) class of non-priority Unsecured Claims, and one (1) class of Equity Interests. This Plan also provides for the payment of Allowed Administrative Claims and Allowed Priority Claims in full on the Effective Date unless the holder of such claim has, prior to the Effective Date, agreed in writing to accept periodic payment on account of its Allowed Administrative Claim or Allowed Priority Claim.

All holders of claims against or interests in the Debtor should refer to Articles IV through VII for information regarding the precise treatment of their claim or interest. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.** (If you do not have an attorney, you may wish to consult one.)

Section 1.02   Required Disclosures

   (a)   *Description and History of the Debtor's Business*

The Debtor is a limited liability company organized under the laws of the Commonwealth of Kentucky in 2017. The Debtor was formed for the purpose of acquiring a majority interest in Bluewater, a diagnostic laboratory principally located in Bullitt County, Kentucky.

On or around September 5, 2017, the Debtor acquired 80% of the issued and outstanding membership interests in Bluewater from Solar Holdings Group, LLC ("Solar Holdings") for $4 million pursuant to a Securities Purchase Agreement (the "Purchase Agreement"). The Debtor's acquisition of the equity interests in Bluewater was predominantly seller-financed and purportedly secured by a guaranty agreement executed by Bluewater, a mortgage on real property owned by Bluewater, a lien upon all of Bluewater's personal property, a pledge of the equity interests acquired. Within weeks of closing on the Purchase Agreement, the Debtor and the two managers of Bluewater that Debtor had appointed discovered numerous misrepresentations Solar Holdings and its management had made to induce Debtor to enter into the Purchase Agreement and related security documents. The misrepresentations and material omissions had caused the Debtor to over-value the equity interests it acquired in Bluewater and, naturally, severely undermined the Debtor's ability to perform on its payment obligations to Solar Holdings.

In December 2017, Solar Holdings and Jennifer Bolus, Solar Holding's president ("Bolus"), filed suit in Fayette Circuit Court against the Debtor and several of its officers alleging, *inter alia*, breach of the Purchase Agreement and payment obligations by the Debtor and Bluewater, fraud, and breaches of fiduciary duties. Contemporaneous with the commencement of the civil action in

Fayette County, Solar Holdings and Bolus obtained an *ex parte* temporary restraining order against the Debtor and its co-defendants. The Fayette Circuit Court subsequently entered a temporary injunction against the Debtor and its co-defendants on January 9, 2018, to preserve the "status quo" and "preserve the funds and operating ability of Bluewater to the benefit of all parties." *See* March 22, 2018 Order entered in Fayette Circuit Court Case No. 17-CI-04443.

On July 30, 2018, the Fayette Circuit Court entered its *Order Transferring Possession, Custody and Control of Bluewater Assets, Accounts* (the "Order to Transfer") in the litigation between Solar Holdings and the Debtor. Following entry of the Order to Transfer, Solar Holdings and Bolus pressed no further for an actual adjudication on the merits of their claims for approximately 18 months, when the Fayette Circuit Court entered a Notice to Dismiss for Lack of Prosecution on January 7, 2020. In the interim period and beyond, Bolus relied upon the Order to Transfer to exercise unfettered dominion and control over Bluewater's assets and operations without supervision from the Fayette Circuit Court or any regard for the economic rights flowing from Debtor's 80% interest in Bluewater.

Without immediate prospects for access to any means of producing income to (a) satisfy its debt obligations or (b) fund litigation expenses necessary to turn the tide in Fayette Circuit Court, the Debtor did not take further action in the state court matter and allowed its standing to lapse with the Kentucky Secretary of State. The Kentucky Secretary of State administratively dissolved the Debtor on October 16, 2019. On July 14, 2021, the Debtor filed its Reinstatement Application with the Kentucky Secretary of State, and the certificate of dissolution previously issued was canceled.

From entry of the Order to Transfer in 2018 through the commencement of this bankruptcy case, the Debtor had no access to financial records or any company information for its primary asset, the 80% equity stake in Bluewater. Instead, Bluewater has been operated and controlled exclusively by its minority membership holder, Solar Holdings. Through discovery conducted in this case, Debtor has learned that the day after the bankruptcy case was filed Bluewater issued checks to Solar Holdings totaling $5.3 million. In addition, Solar Holdings unilaterally deemed itself as the 100% interest holder in Bluewater for purposes of its 2019 and 2020 tax returns. In 2019, Bluewater had gross income of $17,198,160; the Debtor received no distributions or K-1s. In 2020, Solar Holdings—now as purported sole owner of disregarded entity—reported gross income of $21,928,357; the Debtor received no distributions, K-1s, or other remuneration for its interest in Bluewater.

(b) *Liquidation Analysis*

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Plan as **Exhibit 1.02(b)**.

(c) *Ability to Make Future Plan Payments and Operate without further Reorganization*

The Debtor, as plan proponent, must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

Based on analysis of the historical financial information concerning the operations and income of Bluewater obtained through discovery in this bankruptcy case, the Debtor estimates that the current value of its 80% equity interest in Bluewater is between $11.5 million and $17.3 million. The Debtor projects that the continued normal operations of Bluewater, subject to the downward adjustment of inflated expenditures Bluewater has engaged in under current management, will generate annual net income of $4,015,106 in 2022; $2,619,761 in 2023; $2,148,468 in 2024; $1,817,614 in 2025; $1,464,000 in 2026; and $1,484,067 in 2027.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to the Debtor's financial projections.**

Section 1.03    Important Deadlines; Confirmation Hearing

The Court has not yet confirmed this Plan. A separate order will be entered by the Bankruptcy Court setting the following information: (a) the last day for filing written acceptances or rejections of the Plan; (b) the time and place of the hearing on confirmation of the Plan; and (c) the last day for filing written objections to confirmation of the Plan.

If you want additional information about the Plan or the voting procedures, Debtor's counsel may be contacted using the information below:

> Charity S. Bird
> Tyler R. Yeager
> Kaplan Johnson Abate & Bird LLP
> 710 West Main Street, 4th Floor
> Louisville, Kentucky 40202
> Telephone: (502) 416-1630
> Facsimile: (502) 540-8282
> Email: cbird@kaplanjohnsonlaw.com
> Email: tyeager@kaplanjohnsonlaw.com

Section 1.04    Notices

Except as otherwise specified, all notices directed to the Debtor shall be given by any written means, including without limitation electronic mail, facsimile, first-class U.S. mail, express mail or similar overnight delivery service, and hand delivery, and any such notices shall be deemed to have been given when received. Notices shall be delivered as follows:

| To the Debtor: | With a copy to: |
|---|---|
| Curare Laboratory LLC<br>Attn: Tyler Burke<br>4201 Springhurst Blvd., Suite 102<br>Louisville, KY 40241 | Kaplan Johnson Abate & Bird LLP<br>Attn: Charity S. Bird or Tyler R. Yeager<br>710 West Main Street, 4th Floor<br>Louisville, KY 40202<br>Telephone: (502) 416-1630<br>Facsimile: (502) 540-8282<br>Email: cbird@kaplanjohnsonlaw.com<br>Email: tyeager@kaplanjohnsonlaw.com |

**Article II.     General Provisions**

Section 2.01     <u>Definitions and Rules of Construction</u>

The definitions and rules of construction set forth in Bankruptcy Code §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions.

(a)  *Administrative Claim*

"Administrative Claim" means a Claim for costs and expenses of administration allowed under Bankruptcy Code §§ 503(b), 507(b), or 1114(e)(2), including: (i) the actual and necessary costs and expenses of preserving the bankruptcy estate and operating the Debtor's business incurred after the Petition Date (such as wages, salaries, commissions, and payments for services provided or goods accepted); (ii) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses awarded or allowed by Final Order under Bankruptcy Code §§ 328, 330(a), or 331; (iii) any Claims allowed by Final Order pursuant to Bankruptcy Code § 503(b)(9) for the value of goods received by the Debtor in the twenty (20) days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of business; and (iv) all fees and charges assessed against the estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

(b)  *Allowed Claim*

"Allowed Claim" means (i) any Claim against the Debtor, proof of which was filed with the Bankruptcy Court, or (ii) if no proof of claim was filed, a Claim which has been designated by the Debtor as liquidated in an amount certain and not disputed or contingent in the Debtor's schedules or any amendments thereto. In either case, a Claim to which an objection to the allowance thereof has been raised by any party in interest is <u>not</u> an Allowed Claim until a determination is made through a Final Order.

(c) *Bankruptcy Code*

"Bankruptcy Code" means the Bankruptcy Code of 1978, as codified in title 11 of the United States Code by Public Law 95-598, including all amendments thereof and thereto.

(d) *Bankruptcy Court*

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Kentucky.

(e) *Bankruptcy Rules*

"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect at the relevant time.

(f) *Claim*

"Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(g) *Confirmation*

"Confirmation" means the entry of an order of confirmation of the Plan by the Bankruptcy Court.

(h) *Confirmation Order*

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1191.

(i) *Debtor*

"Debtor" means Curare Laboratory LLC.

(j) *Final Order*

"Final Order" means an order of the Bankruptcy Court which has become final, and which may no longer be the subject of an appeal, or any certiorari or mandamus proceeding or any other order, the effectiveness of which has not been, and cannot be, stayed.

(k) *Plan*

"Plan" means this Small Business Plan and its exhibits, together with any amendments, supplements, or modifications thereto as may be hereafter be filed prior to Confirmation.

(l) *Priority Claim*

"Priority Claim" means a Claim that is entitled to priority in payment pursuant to Bankruptcy Code § 507(a) that is <u>not</u> an Administrative Claim or a Priority Tax Claim.

(m) *Priority Tax Claim*

"Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to Bankruptcy Code § 507(a)(8).

(n) *Secured Claim*

"Secured Claim" means an Allowed Claim, including principal, interest, attorney's fees, and other amounts owing by the Debtor, secured by a lien on property of the Debtor, which lien is valid, perfected, and enforceable under applicable non-bankruptcy law and not subject to avoidance under the Bankruptcy Code or such applicable non-bankruptcy law as allowed in this case, but only to the extent that such claim is not greater than the value of the Debtor's assets which the Bankruptcy Court finds are validly encumbered as security for such Claim.

Section 2.02    <u>Effective Date</u>

The Effective Date of this Plan is the first business day following the date that is 14 days after entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

Section 2.03    <u>Severability</u>

If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 2.04    <u>Binding Effect</u>

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

Section 2.05    <u>Captions</u>

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Section 2.06    <u>Controlling Effect</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the Commonwealth of Kentucky govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise specifically provided in this Plan or the respective agreements, documents, or instruments.

Section 2.07    <u>Corporate Governance</u>

The Debtor is a manager-managed limited liability company organized under the laws of the Commonwealth of Kentucky. Tyler Burke is the manager of the Debtor. This Plan does not contemplate issuance of new equity security interests in the Debtor or any adjustment to the rights, powers, and duties of the Debtor's managers as set forth in the Operating Agreement.

Section 2.08    <u>Reservation of Rights</u>

The filing of the Plan, any statement or provision contained herein, or any action taken by any creditor with respect to the Plan shall not be, or be deemed to be, (i) an admission against interest nor (ii) a waiver of any rights which Debtor may have against any entity, or which any creditor may have against the Debtor, Debtor's property, or any other creditor may have against any entity. All such rights are specifically reserved until entry of the Confirmation Order. The Debtor reserves its right to object to Claims. In the event that no Confirmation Order is entered, neither this Plan nor any statement contained herein or action taken in connection herewith may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the bankruptcy case involving the Debtor.

**Article III.    Classification of Claims and Interests**

Section 3.01    <u>Class 1 Priority Unsecured Claims</u>

Class 1 consists of all Allowed Claims entitled to priority under Bankruptcy Code § 507(a) <u>except</u> Administrative Claims and Priority Tax Claims. As of the date this Plan is proposed, Laboratory Investment Company, LLC has a potential claim entitled to treatment as a Class 1 Claim pursuant to the Court's *Final Order Authorizing Debtor to Obtain Credit on a Super-Priority Basis* [Doc. 87]. However, the Debtor has not yet borrowed against the post-petition credit offered by Laboratory Investment Company, LLC.

Section 3.02    <u>Class 2 Secured Claim of Solar Holdings</u>

Class 2-A consists of the Allowed Secured Claim arising from a Promissory Note in the original principal amount of $3,750,000.00 that was executed by the Debtor and delivered to Solar Holdings on or around September 5, 2017, as consideration due under the parties' Purchase Agreement (the "<u>Solar Holdings Note</u>"). The Debtor's repayment obligations under the Solar Holdings Note are secured by a Membership Interest Pledge Agreement encumbering the Debtor's interest in 24 million shares of Bluewater (the "<u>Solar Holdings Collateral</u>").

Section 3.03    <u>Class 3 Non-Priority Unsecured Claims</u>

Class 3 consists of all Allowed Claims that are not secured by property of the estate or entitled to priority under Bankruptcy Code § 507(a). Known holders of Class 3 Claims include:

| **Claimant** | **Amount** |
|---|---|
| John Wallace Langley | $250,000.00 |

| | |
|---|---:|
| Laboratory Investment Company, LLC | $15,000.00 |
| Ronald C. Switzer | $100,000.00 |
| Scutchfield Law, PLLC | Unknown |
| Tom Ludt | $50,000.00 |
| **TOTAL:** | **$415,000.00** |

Section 3.04    Class 4 Equity Interests

Class 4 consists of all pre-petition equity interests in the Debtor. The equity membership interests in the Debtor are presently held and controlled by the following entities:

| **Interest Holder** | **Equity Percentage** |
|---|---:|
| BC Management 2 LLC | 5.625% |
| BC Management LLC | 5.625% |
| Curare Telehealth | 10.000% |
| JJSquared LLC | 45.000% |
| John Wallace Langley | 14.625% |
| Larry Hancock | 3.375% |
| Medco Investments, LLC | 11.250% |
| Rodney Conrad Living Trust | 2.250% |
| Steven Geisler | 1.125% |
| Tom Ludt | 1.125% |
| **TOTAL:** | **100.000%** |

**Article IV.    Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees**

Section 4.01    Unclassified Claims

Pursuant to Bankruptcy Code § 1123(a)(1), this Plan does not designate classes for Allowed Claims that are Administrative Claims or Priority Tax Claims that are not also Allowed Secured Claims.

Section 4.02    Administrative Expense Claims

Known holders of Allowed Administrative Claims include:

| **Claimant** | **Est. Amount** |
|---|---:|
| Kaplan Johnson Abate & Bird LLP | $265,000.00 |
| Michael Wheatley, Subchapter V Trustee | $2,500.00 |
| **TOTAL:** | **$267,500.00** |

(a) *Treatment if Plan Confirmed under Bankruptcy Code § 1191(a)*

Except to the extent that the holder of a particular Administrative Claim allowed pursuant to Bankruptcy Code § 503(b) has agreed to alternative treatment of its Administrative Claim, each holder of an Allowed Administrative Claim will receive cash equal to the amount of its Allowed Administrative Claim on the Effective Date.

(b) *Treatment if Plan Confirmed under Bankruptcy Code § 1191(b)*

Each holder of an Allowed Administrative Claim will receive regular monthly installment payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such Allowed Administrative Claim over a period ending not later than one (1) year after Confirmation.

Section 4.03    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed to alternative treatment, each will receive regular installment payments, in case, in an amount sufficient to satisfy its Priority Tax Claim, plus interest accruing at the applicable statutory rate, on or before July 29, 2026. As of the date this Plan is proposed, there are no known Allowed Priority Tax Claims against the Debtor.

Section 4.04    Statutory Fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid on the Effective Date.

**Article V.    Treatment of Claims and Interests Under the Plan**

Section 5.01    Treatment of Class 1 Priority Unsecured Claims

Class 1 Claims are impaired. The holder of a Class 1 Claim will be paid in full, in cash, in accordance with the terms of the Line of Credit Note attached as an exhibit to the Debtor's *Emergency Motion for Authority to Obtain Credit on a Super-Priority Basis* after (i) Confirmation and (ii) the Debtor's recovery or receipt of distributions it is entitled to receive as the 80% equity member of Bluewater in an amount sufficient to satisfy the indebtedness due under the Line of Credit Note.

Section 5.02    Treatment of Class 2 Secured Claim of Solar Holdings

The Class 2 Claim is impaired. The holder of the Class 2 Claim shall retain its lien rights in the Solar Holdings Collateral in the same scope and priority as existed prior to the Petition Date until the Class 2 Claim is satisfied in accordance with the terms of the Plan.

Following the Effective Date, the Debtor will continue to pursue protection and enforcement of its 80% equity interest in Bluewater, including, without limitation, recovery and/or setoff of distributions improperly issued to Solar Holdings since entry of the Order to Transfer, and the

reinstatement of Debtor's control of Bluewater's operations in accordance with the terms of a properly ratified operating agreement among the equity members of Bluewater. The Debtor anticipates that distributions to which it or Bluewater is entitled to recover from Solar Holdings, through the pending adversary proceeding or otherwise, are of a value far in excess of the indebtedness owed under the terms of the Solar Holdings Note. Accordingly, the Debtor will satisfy the amounts due under the Solar Holdings Note through setoff against Solar Holding's total liability to the Debtor.

Section 5.03    Treatment of Class 3 Non-Priority Unsecured Claims

The Class 3 Claims are impaired. Beginning on the date that is sixty (60) days after satisfaction of the Class 2 Claim, the Debtor shall distribute cash payments to holders of Class 3 Claims equal to face amount of their respective Allowed Claims.

Section 5.04    Treatment of Class 4 Equity Interests

The Class 4 equity interests in the Debtor are impaired. The holders of Class 4 equity interests shall retain their equity interests in the Debtor as of the Effective Date but shall not receive any distributions or remuneration on account of their respective equity interests until the Class 3 Claims have been satisfied in full.

**Article VI.    Allowance and Disallowance of Claims**

Section 6.01    Disputed Claims

A disputed claim is a Claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has identified such Claims as "disputed," "contingent," or "unliquidated" in its schedule of liabilities filed pursuant to Bankruptcy Code § 521(a)(1)(B), as may be amended from time to time.

(a)    *Proofs of Claim Filed*

The Debtor reserves its right pursuant to Bankruptcy Code § 502 and Bankruptcy Rule 3007 to object to, and seek disallowance of, any proof of claim which the Debtor believes is not an accurate statement of obligations owed to the holder of such Claim. The Debtor will continue to review its books and records to verify that claimants filing proofs of claim herein assert valid rights to payment against the bankruptcy estate. If the Debtor or another party in interest objects to the allowance of a proof of claim that has been filed, said Claim will not be treated as an Allowed Claim, and therefore entitled to distributions under the Plan, unless and until a determination is made by a Final Order.

(b)    *Proofs of Claim Not Filed*

If the Debtor has identified a claim as "disputed," "contingent," or "unliquidated" in its schedule of liabilities filed pursuant to Bankruptcy Code § 521(a)(1)(B), as may be amended from time to

time, and no proof of claim has been filed, said Claim is a disputed claim subject to the discharge provided pursuant to 0 of the Plan. If an entity subsequently files a proof of claim related to a Claim scheduled by the Debtor as "disputed," "contingent," or "unliquidated," the Debtor shall have an opportunity to object to the allowance of said Claim.

Section 6.02    Delay of Distribution on a Disputed Claim

No distribution will be made on account of a disputed claim unless such Claim is allowed by a Final Order or a written agreement signed by the Debtor and approved by the Bankruptcy Court in accordance with Section 6.03 of the Plan.

Section 6.03    Settlement of Disputed Claims

The Debtor will retain the power and authority to settle and compromise a disputed claim with Bankruptcy Court approval and compliance with Bankruptcy Rule 9019.

**Article VII.    Provisions for Executory Contracts and Unexpired Leases**

This Article VII identifies the treatment of the Debtor's executory contracts and unexpired leases under the Plan. "Assumption" means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Accordingly, this Article VII also describes how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and assignment if applicable, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection within the deadline for objection to Confirmation, unless the Bankruptcy Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Section 7.01 of the Plan or have not previously been assumed, and assigned if applicable, or are not the subject of a pending motion to assume, and assign if applicable, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases, and the effect of assumption, assignment, and/or rejection.

If you object to the rejection of your unexpired lease or executory contract under the Plan, you must file and serve your objection within the deadline for objection to Confirmation, unless the Bankruptcy Court has set an earlier time.

Section 7.01    Assumed Executory Contracts and Unexpired Leases

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

| Non-Debtor Counterparty | Nature of Executory Contract or Unexpired Lease | To be Assumed or Assumed and Assigned (Assignee) | Cure Claim; Payment |
|---|---|---|---|

| None | | | |
|---|---|---|---|

Section 7.02    Rejected Executory Contracts and Unexpired Leases

Except for executory contracts and unexpired leases that have been assumed, and assigned if applicable, before the Effective Date or under Section 7.01 of the Plan, or that are the subject of a pending motion to assume, and assign if applicable, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

Section 7.03    Bar Date for Rejection Claims

Any Claim based on the rejection of an executory contract or unexpired lease is a disputed claim subject to Article VI of the Plan. Unless the Claim based on the rejection of an executory contract or unexpired lease was subject to the bar date described in **Error! Reference source not found.** of the Plan or an earlier deadline was set by Final Order, **the deadline for filing a proof of claim based on a Claim arising from the rejection of an executory contract or unexpired lease is twenty-one (21) days after entry of the Confirmation Order**. Any Claim based on the rejection of an executory contract or unexpired lease will be barred if the Proof of Claim is not timely filed.

**Article VIII.    Means for Implementation of the Plan**

Section 8.01    Post-Confirmation Management

Following Confirmation, the Debtor will continue to be managed by Tyler Burke. The Debtor's managers and officers do not presently receive any salary or benefits. After Confirmation, the Debtor may hire, fire, and adjust compensation of its managers and officers at the discretion of the Debtor's manager without application to or authority from the subchapter V trustee or the Bankruptcy Court.

Section 8.02    Title to Assets

Except as otherwise provided in the Plan or the Confirmation Order, Confirmation under Bankruptcy Code § 1191(a), (i) vests all property of the estate in the Debtor, and (ii) after Confirmation, the property dealt with by the Plan is free and clear of all Claims and interests of creditors and equity security holders.

If the Plan is confirmed under Bankruptcy Code § 1191(b), property of the estate shall include, in addition to the property described in Bankruptcy Code § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the Petition Date but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in Bankruptcy Code § 1185, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the estate.

Section 8.03    <u>Termination of Subchapter V Trustee Service</u>

    (a)    *Termination if Plan Confirmed under Bankruptcy Code § 1191(a)*

If the Plan is confirmed under Bankruptcy Code § 1191(a), the Debtor shall cause notice of substantial consummation of the Plan to be filed and served on all parties in interest upon the Effective Date. Following substantial consummation of the Plan, the service of the subchapter V trustee in the case shall terminate unless and until the United States Trustee reappoints a subchapter V trustee as needed for performance of duties under Bankruptcy Code §§ 1183(b)(3)(C) and 1185(a).

    (b)    *Termination if Plan Confirmed under Bankruptcy Code § 1191(b)*

Although the Debtor reserves the right to modify or amend the Plan prior to Confirmation, the Debtor may, at its election, request at the hearing on Confirmation that the Bankruptcy Court confirm the Plan under Bankruptcy Code § 1191(b) if the requirements of subsections 1129(a)(8), (10), and/or (15) are not met. If the Plan is confirmed under Bankruptcy Code § 1191(b), the Debtor shall, unless otherwise ordered by the Bankruptcy Court, make payments or other distributions as provided in Article V of this Plan to the subchapter V trustee for pro rata distribution among holders of Claims or interest in those Classes that have not accepted the Plan as determined by Bankruptcy Code § 1126(c) or (d), as applicable.

**Article IX.    Discharge**

Section 9.01    <u>Discharge if Plan Confirmed under Bankruptcy Code § 1191(a)</u>

If the Plan is confirmed under Bankruptcy Code § 1191(a), on the Effective Date the Debtor will be discharged from any debt that arose before Confirmation, to the extent specified in Bankruptcy Code § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt (i) imposed by this Plan; or (ii) to the extent provided in Bankruptcy Code § 1141(d)(6).

Section 9.02    <u>Discharge if Plan Confirmed under Bankruptcy Code § 1191(b)</u>

Although the Debtor reserves the right to modify or amend the Plan prior to Confirmation, the Debtor may, at its election, request at the hearing on Confirmation that the Bankruptcy Court confirm the Plan under Bankruptcy Code § 1191(b) if the requirements of subsections 1129(a)(8), (10), and/or (15) are not met. If the Plan is confirmed under Bankruptcy Code § 1191(b), Confirmation does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in Bankruptcy Code § 1192. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in Bankruptcy Code § 1192; or (ii) excepted from discharge under Bankruptcy Code § 523(a), except as provided in Bankruptcy Rule 4007(c).

**Article X.     Other Plan Provisions**

Section 10.01  <u>Voting</u>

Any party in interest may object to Confirmation of the Plan if such party believes that the requirements for Confirmation have not been met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

Section 10.02  <u>Modification of Plan</u>

Subject to the restrictions on plan modification set forth in Bankruptcy Code § 1193, the Debtor reserves the right to alter, amend, or modify the Plan before the Effective Date.

Section 10.03  <u>Continuation of Stay</u>

Unless otherwise provided by the Confirmation Order or other Final Order, all injunctions or stays existing in this chapter 11 case pursuant to Bankruptcy Code §§ 101 or 362 or otherwise and in effect at Confirmation shall remain in full force and effect until entry of the final decree in this chapter 11 case.

Section 10.04  <u>Retention of Jurisdiction</u>

Following Confirmation, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, this chapter 11 case and implementation of the Plan, including without limitation the matters described in this Section 10.04. Notwithstanding these provisions, the Debtor and any entity may agree in writing that the jurisdiction of the Bankruptcy Court is not exclusive but concurrent with other courts of competent jurisdiction.

If the Bankruptcy Court abstains from exercising or is otherwise without jurisdiction over any matter arising out of this chapter 11 case, including the matters described in this Section 10.04, or if the Debtor elects to bring any action in any other forum, this Section 10.04 shall not control, prohibit, or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

(a)  *Contested Matters*

The Bankruptcy Court shall adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained in this chapter 11 case or pursuant to the Plan, all proceedings to adjudicate the allowance of disputed claims, and all controversies and issues arising from or relating to any of the foregoing.

(b)  *Executory Contracts or Unexpired Leases*

The Bankruptcy Court shall hear and determine all motions for approval of (i) the assumption or rejection, or (ii) the assumption and assignment of executory contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and

determine the allowance of Claims resulting therefrom including the amount and treatment of any cure claim.

    (c)  *Claims Resolution*

The Bankruptcy Court shall hear and determine all proceedings to allow, disallow, determine, liquidate, classify, reclassify, estimate, or establish the priority, secured, or unsecured status of any Claim or interest, including the resolution of any request for allowance or payment of any Administrative Claim and the resolution of any objections to the allowance, priority, or classification of Claims or interests.

    (d)  *Remedial Orders*

The Bankruptcy Court shall retain jurisdiction to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or the distributions under the Plan are enjoined or stayed.

    (e)  *Plan Consummation*

The Bankruptcy Court shall retain jurisdiction to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with the Plan or Confirmation Order.

    (f)  *Plan Modification*

The Bankruptcy Court shall retain jurisdiction to modify the Plan or Confirmation Order before or after the Effective Date; modify any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan or Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any order from the Bankruptcy Court, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan or Confirmation Order in such manner as may be necessary or appropriate to consummate the Plan.

    (g)  *Fee Applications*

The Bankruptcy Court shall hear and determine all applications for compensation and reimbursement of expenses under the Plan or Bankruptcy Code §§ 328, 330, 331, 503(b), 1103, and 1129(a)(4).

    (h)  *Priority Claims*

The Bankruptcy Court shall hear and determine requests for the payment of Claims entitled to priority under Bankruptcy Code § 507(a), including compensation or and reimbursement of expenses of parties entitled thereto.

    (i)  *State, Local, and Federal Taxes*

The Bankruptcy Court shall hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146.

    (j)  *Injunctions*

The Bankruptcy Court shall retain jurisdiction to enforce existing injunctions or any injunction contained in the Plan or Confirmation Order, and to issue injunctions, and enter and implement other orders or take such other actions as may be necessary or appropriate to restrain any interference with consummation, implementation, or enforcement of the Plan or Confirmation Order.

    (k)  *Enforcement of Orders*

The Bankruptcy Court shall retain jurisdiction to enforce all orders previously entered in this chapter 11 case.

Section 10.05  <u>Final Decree</u>

Once the estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor or such other party as the Bankruptcy Court may designate in the Confirmation Order shall file a motion with the Bankruptcy Court to obtain a final decree to close the bankruptcy case. Alternatively, the Bankruptcy Court may enter a final decree on its own motion.

**Article XI.    Recommendation & Conclusion**

It is the Debtor's position that this Plan is substantially preferable to a liquidation under chapter 7 of the Bankruptcy Code. It is important that you exercise your right to vote on the Plan. The Debtor believes that the Plan fairly and equitably provides for the treatment of all valid claims against the Debtor. **<u>The Debtor recommends and urges all creditors to vote to accept the Plan.</u>**

[*Signature page follows*]

IN WITNESS WHEREOF, the Debtor has submitted this Plan the 1st day of June 2022.

                                                  CURARE LABORATORY LLC
                                                  Debtor and Debtor in Possession

                                                  */s/ Tyler Burke*
                                                  Tyler Burke
                                                  Manager